**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| TERESA WILLIAMS, as<br>surviving spouse and as<br>administratrix of the estate of<br>Lewis Williams, Jr., Deceased, | : <br> : <br> : <br> : <br> : | |
| Plaintiff, | : <br> : | |
| v. | : <br> : | CIVIL ACTION NO.<br>1:15-CV-02679-RWS |
| CITY OF ATLANTA, GEORGIA,<br>ATLANTA POLICE<br>DEPARTMENT, POLICE CHIEF<br>GEORGE N. TURNER,<br>individually and in his official<br>capacity, and OFFICER JUSTIN<br>LOCKE, individually and in his<br>official capacity, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | |
| Defendants. | : <br> : | |

**<u>ORDER</u>**

This case comes before the Court on Defendants' Motion to Dismiss

Plaintiff's Complaint [3].  After reviewing the record, the Court enters the

following order.

**Background**[1]

---

[1]  As the case is before the Court on a Motion to Dismiss, the Court accepts as true the facts alleged in the complaint.  <u>Cooper v. Pate</u>, 378 U.S. 546, 546 (1964).

This case arises out of a series of events that transpired on July 3, 2014, which ultimately led to the shooting death of Lewis Williams, Jr., by Officer Justin Locke of the Atlanta Police Department ("Officer Locke"). The following facts are taken from Plaintiff's Complaint [1-1] and, for purposes of Defendants' Motion to Dismiss, are accepted as true.

On July 3, 2014, two officers of the Atlanta Police Department responded to a call of a domestic disturbance at 150 Adair Avenue, Atlanta, Georgia. (Compl., Dkt. [1-1] ¶ 10.) The officers received a description of a man who was involved in the disturbance.[2] (Id.) That description matched the appearance of Mr. Williams; however, the officers were unable to locate him before withdrawing from the scene in response to another 911 call. (Id.) Soon after, Officer Locke arrived at 150 Adair Avenue. (Id. ¶ 11.) There, he spoke to Mr. Williams's wife, Plaintiff Teresa Williams, who informed him that Mr. Williams suffered from dementia and hearing loss. (Id.) Officer Locke then left to search for Mr. Williams. (Id.)

---

[2] The nature of the disturbance at 150 Adair Avenue is unclear from the Complaint. However, it appears to have involved some altercation between Henry Hancock and Mr. Williams (or someone matching the description of Mr. Williams). (Compl., Dkt. [1-1] ¶ 13.)

Officer Locke found Mr. Williams walking alone on Claire Drive.  (Id. ¶ 14, 19.)  Mr. Williams was walking peaceably; he was unarmed and did not appear threatening.  (Id. ¶¶ 12, 15-16, 20, 45.)  Plaintiff alleges that Officer Locke lacked probable cause to presume Mr. Williams had committed any crime and did not have a warrant for his arrest.  (Id. ¶¶ 12, 14.)  Nevertheless, believing Mr. Williams to match the physical description given at 150 Adair Avenue, Officer Locke decided to attempt an arrest.  (Id.)  He did not request back-up, in violation of proper police protocol.  (Id.)  And though he knew Mr. Williams suffered from dementia and hearing loss, Officer Locke did not engage his lights or sirens, nor did he identify himself as a police officer.  (Id. ¶ 22.)  Instead, Officer Locke unholstered his firearm, pointed it at Mr. Williams, and began rapidly approaching him.  (Id. ¶¶ 22-23, 26.)  Mr. Williams did not recognize Officer Locke as a police officer.  (Id. ¶ 38.)  Standing on the sidewalk, he was startled, frightened, and confused as Officer Locke descended upon him.  (Id. ¶ 26.)  However, despite fearing for his life, Mr. Williams did not approach Officer Locke or attempt to flee.[3]  (Id. ¶ 46.)  Then, Officer Locke

---

[3] Plaintiff alleges in her complaint that Mr. Williams was in "reasonable apprehension of receiving a violent injury" and "had a right to defend himself and to retreat." (Id. ¶¶ 23, 38.)  Yet, it is unclear whether Mr. Williams did, in fact, attempt to

AO 72A
(Rev.8/82)

panicked and discharged his firearm.  (Id. ¶¶ 27, 28.)  Mr. Williams was shot

multiple times in the arm and chest.  (Id. ¶¶ 27, 41.)  He died at the scene.  (Id.

¶ 44.)

Plaintiff Teresa Williams, as surviving spouse and administrator of her

deceased husband's estate, brought this suit against Officer Locke, the City of

Atlanta, Atlanta Police Department ("APD"), and Atlanta Police Chief George

Turner ("Chief Turner") in State Court of Fulton County.  Defendants removed

to this Court.  (Dkt. [1].)  Plaintiff brings her claims under both federal and

state law.  (Compl., Dkt. [1-1].)  In particular, Plaintiff alleges causes of action

under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth

Amendments (Counts I, II, and III).[4]  Further, Plaintiff raises claims under

_____

defend himself against Officer Locke.  As it is more favorable to Plaintiff's case to
infer that Mr. Williams did not, the Court will proceed under that assumption.  Bryant
v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

[4] As a preliminary matter, the Court concludes that any reference to violations
of the Eighth Amendment in the parties' filings is misplaced.  (See Compl., Dkt. [1-1]
¶¶ 1, 2, 32; Defs.' Mot. to Dismiss Compl., Dkt. [3] at 18.)  Though Plaintiff's
Complaint alleges that Defendant Locke's actions violated Mr. William's "[f]reedom
from the use of excessive, unreasonable and unjustified force against his person," the
following paragraph specifically references only the Fourth and Fourteenth
Amendments.  (Compl., Dkt. [1-1] ¶¶ 48, 49.)  Therefore, it appears that Plaintiff
intended to invoke the constitutional protection from excessive force implemented
during an arrest, which is embodied in the Fourth Amendment, not the Eighth.  See,
e.g., Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004).  And as it is well-

Georgia tort law for assault, battery, wrongful death, and negligent breach of ministerial duties (Counts IV, V, VI, and VII).  Finally, Plaintiff asserts that she is entitled to reasonable attorney's fees (Count VIII).

Defendants now move to dismiss each of those claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Defs.' Mot. to Dismiss Compl. ("Mot. to Dismiss"), Dkt. [3].)  The Court sets out the legal standard governing Defendants' Motion to Dismiss before considering the motion on the merits.

## Discussion

## I.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  In order to

---

settled that the Eighth Amendment applies only to those convicted of crimes, <u>see, e.g.</u>, <u>Whitley v. Alberts</u>, 475 U.S. 312, 319 (1986), the Court will proceed on the assumption that Plaintiff bases her Section 1983 claims only on purported violations of the Fourth and Fourteenth Amendments.

5

withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.[5]

---

[5] The Court notes that Plaintiff takes particular issue with the "overuse" of Twombly's pleading standard.  (Pl.'s Resp. to Defs.' Mot. to Dismiss (Pl.'s Resp.), Dkt. [7] at 6.)  Nevertheless, the Court is bound by this Supreme Court precedent and its progeny.

## II.   <u>Analysis</u>

Defendants move to dismiss Plaintiff's Complaint on four grounds. First, Defendants argue that the Atlanta Police Department is not a legal entity capable of being sued.  Second, Defendants argue that Plaintiff does not allege sufficient facts to hold the City, the individual Defendants in their official capacities, and Defendant Turner in his individual capacity liable for claims under 42 U.S.C. § 1983.  Third, Defendants argue that Plaintiff's state law claims against the City and individual officers in their official capacities are barred by the doctrine of sovereign immunity.  Fourth, Defendants argue that Defendant Lock in his individual capacity is entitled to qualified immunity and cannot be liable under state law.  Plaintiff opposes Defendants' motion, arguing that the Complaint contains sufficient facts to state a claim against each defendant under both state and federal law, that the City has waived sovereign immunity at least to the extent of an existing insurance policy, and that Officer Locke's actions are not protected by official immunity.  Using the legal framework set forth above, the Court examines Plaintiff's claims against each Defendant to determine whether the Complaint states a claim upon which relief may be granted.

A.      Claims against Defendant Atlanta Police Department

As an initial matter, the Court agrees with Defendants that the Atlanta Police Department is not an entity capable of being sued.  In a federal court, the capacity of an entity to be sued is determined by the law of the state where the court is located.  See FED. R. CIV. P. 17(b)(3).  The State of Georgia recognizes only three classes as legal entities capable of suing or being sued: (1) natural persons; (2) corporations; and (3) quasi-artificial persons that the law recognizes as being capable of bringing suit.  Ga. Insurers Insolvency Pool v. Elbert Cnty., 368 S.E.2d 500, 502 (Ga. 1988).  The Eleventh Circuit has indicated that "[s]heriff's departments and police departments are not usually considered legal entities subject to suit" under Georgia law and therefore may not be properly sued as a party in federal court.  Lawal v. Fowler, 196 F. App'x 765, 768 (11th Cir. 2006) (quoting Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992)); see also Lovelace v. DeKalb Cent. Probation, 144 F. App'x 793, 795 (11th Cir. 2005) (affirming district court's dismissal of DeKalb County Police Department as a defendant because under Georgia law it is not a legal entity subject to suit); Jackson v. Hall Cnty. Sheriff's Office, No. 2:10-cv-00070-WCO (N.D. Ga. Mar. 3, 2011) (order dismissing all claims against the

Hall County Sheriff's Office on grounds that it is not an entity having capacity to be sued).

Plaintiff does not dispute Defendants' motion as far as it pertains to Atlanta Police Department.  (Pl.'s Resp., Dkt [7] at 8.)  Accordingly, all claims against the Atlanta Police Department are **DISMISSED**.

B.    Claims against Defendant City of Atlanta

Plaintiff asserts claims against the City of Atlanta under both 42 U.S.C. § 1983 and Georgia law.  Defendants move to dismiss on grounds that these claims fail as a matter of law.  The Court now considers each of these claims in turn, beginning with Plaintiff's Section 1983 claims.

*1.    Section 1983*

"In order to prevail in a civil rights action under Section 1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.'" Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir.1990)).

9

Local government units, such as cities, constitute "persons" subject to suit under Section 1983.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).  At the same time, however, the Supreme Court "has placed strict limitations on municipal liability under [Section] 1983."  Grech v. Clayton Cty., 335 F.3d 1326, 1329 (11th Cir. 2003).

"[A] municipality cannot be held liable under [Section] 1983 on a *respondeat superior* theory."  Monell, 436 U.S. at 691.  Instead, local governing bodies, such as cities, can be sued under Section 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Id. at 690.  In other words, to hold a city liable under section 1983, a plaintiff must show that a city employee or policymaker committed the constitutional violation, and did so pursuant to an official municipal policy or custom.  Id. at 694; Grech, 335 F.3d at 1329 n.5 (explaining that the requirement of a policy or custom "is intended to distinguish acts of the *municipality* from acts of *employees* of the municipality," thereby clarifying "that municipal liability is limited to action *for which the municipality is actually responsible*" (quoting Pembaur v. City of

10

Cincinnati, 475 U.S. 469, 479-80 (1986)) (emphasis in original)).  Plaintiff, therefore, must identify an official policy or practice that was the driving force behind the alleged violation of Mr. Williams's constitutional rights.

Plaintiff appears to base her Section 1983 claim against the City of Atlanta on two allegations: (1) failure to adequately supervise and train and (2) negligent hiring.  The Court considers whether either of these claims, as pleaded in the Complaint, identify policies or customs of the City that can give rise to Section 1983 liability.[6]

Plaintiff's first allegation does not.  Only in "limited circumstances" may an allegation of failing to train or supervise subordinates serve as the basis for a Section 1983 claim.  Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing City of Canton v. Harris, 489 U.S. 378, 387 (1989)).  To establish liability under Section 1983 based on the inadequacy of police training or supervision, a plaintiff must show that "the failure to train [or supervise] amounts to deliberate indifference to the rights of persons with whom the

---

[6] The Court notes that Plaintiff also asserts the City failed to implement "policies governing the conduct of officers" and to hold officers "accountable for adhering to professional standards of conduct."  (Compl., Dkt. [1-1] ¶ 59.)  These allegations are encompassed within Plaintiff's claim for inadequate training and supervision. As such, the Court does not discuss them separately.

11

police come into contact." Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, 637 F.3d 1178, 1188 (11th Cir. 2011) (quoting City of Canton, 489 U.S. at 388).  "Deliberate indifference can be established in two ways: by showing a widespread pattern of similar constitutional violations by untrained [or unsupervised] employees or by showing that the need for training [or supervision] was so obvious that a municipality's failure to train its employees would result in a constitutional violation." Mingo v. City of Mobile, 592 F. App'x 793, 799-800 (11th Cir. 2014), cert. denied, 135 S. Ct. 2895 (2015).

By showing deliberate indifference, a failure to train or supervise can properly be characterized as a "policy" or "custom" of the municipality.  Of course, a plaintiff may also show the failure to train was pursuant to an official policy. However, since Plaintiff has not identified any policy or custom adopted or promulgated by the City of Atlanta that caused her injury, and because municipalities will rarely have any "express written or oral policy of inadequately training or supervising its employees," the Court focuses its attention on whether Plaintiff has sufficiently alleged deliberate indifference in her Complaint.  Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

Here, the Complaint does not include sufficient facts about a history of

12

abuse or widespread problems that would allow the Court to find that the City was put on notice regarding the need for more training or supervision.  The Complaint contains only conclusory allegations about the City's failure to provide adequate supervision and training on "procedures pertaining to [officers'] lawful authority, the use of force, and proper use of firearms." (Compl., Dkt. [1-1] ¶ 63.)  Essentially, Plaintiff has simply stated a conclusion–that Defendants "fail[ed] to develop and adopt standard operating procedures with respect to the activities of police officers . . ., thereby allowing them to make decisions without proper constitutional guidance"–but has not provided sufficient facts from which the Court could draw that conclusion. The Court cannot accept these unsupported allegations as a valid basis for a claim against the City.  See Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1187-88 (11th Cir. 2002) (stating that "conclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal").  Without basis in specific facts, such assertions are not sufficient to show that the training of Atlanta police officers was inadequate and that the city was on notice of any deficiency.

Of course, there is an "obvious need to train [armed] police officers on

13

the constitutional limitations on the use of deadly force." <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1352 (11th Cir. 1998) (citing <u>City of Canton</u>, 48 U.S. at 390 n.10).  But Plaintiff's Complaint still falls short.  Mere notice of a need to train or supervise is not sufficient.  Rather, a plaintiff must further establish that the city "made a deliberate choice not to take any action." <u>Id.</u> at 1350.  The Complaint does not contain allegations sufficient to identify a specific decision made by a final policymaker for the City resulting in a systemic failure to adequately train and supervise police officers.  As a result, the Complaint does not include facts from which the Court could conclude that the City has violated Section 1983 under a theory of inadequate training and supervision.

Nor can Plaintiff's second allegation–that the City of Atlanta hired unqualified individuals–support a claim against the City under Section 1983. To hold a city liable under Section 1983 based on an "isolated decision to hire [an officer] without adequate screening," a plaintiff must demonstrate "that the decision reflected a conscious disregard for a high risk that [the officer] would use excessive force in violation of [the plaintiff's] federally protected right." <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 415-16 (1997).  Moreover, the plaintiff must show the offending "officer was highly likely to inflict the

14

particular injury suffered by the plaintiff," as well as a strong "connection

between the background of the particular applicant and the specific

constitutional violation alleged." Id. at 412.

Plaintiff's Complaint does not satisfy this standard.  Plaintiff does not

identify any "pattern of injuries" linked to the City's hiring decisions.  Id. at

408.  Rather, Plaintiff makes the broad assertion that the City "hired

individuals, such as Defendant Locke, who were not qualified for their

positions by virtue of their backgrounds."  (Compl., Dkt [1-1] p 64.)  Plaintiff

does not offer any facts related to any officer's background or how that

background would provide notice that Officer Locke or any other officer would

inflict the exact constitutional injury alleged.

Furthermore, Plaintiff has not sufficiently pled causation.  Plaintiff

merely alleges that "hiring an officer who was not qualified to be entrusted

with firearms" was a partial "cause of the violations of decedent's rights."

(Compl., Dkt. [1-1] ¶ 65.)  This fails to allege facts that would allow the Court

to infer how Officer Locke was unqualified, whether that lack of qualification

was evident at the application stage, and how that lack of qualification resulted

in the death of Mr. Williams.  The law that binds this Court does not permit

such an attenuated link.  If it did, the "danger that a municipality would be held liable without fault [would be too] high." Brown, 520 U.S. at 408.  Hence, Plaintiff's Complaint fails to allege facts that would allow the Court to conclude that the City of Atlanta hired unqualified individuals and that such hiring caused the constitutional violations alleged.

As a result, Plaintiff's Section 1983 claims against the City fail as a matter of law based on either of Plaintiff's theories.  Defendants' Motion to Dismiss Plaintiff's constitutional claims against the City of Atlanta is therefore **GRANTED**.

However, the Court recognizes the high bar that Section 1983 Plaintiffs face even at the motion to dismiss stage.  If discovery reveals an official policy or custom, Plaintiff may seek leave to amend her Complaint, provided that this motion is made within 75 days of the commencement of discovery and includes an amended complaint that fully satisfies the applicable pleading requirements. That is, any amendment must include specific factual allegations that provide context and information that would support Plaintiff's overall allegations regarding the existence of a policy or practice in place, consistent with the requirements for establishing such a claim under 42 U.S.C. § 1983 against the

16

City of Atlanta.  See generally Grech, 335 F.3d at 1348; Gold v. City of Miami, 151 F.3d 1346, 1350-51 (11th Cir. 1998).

    *2.*    *State Law Claims*

Next, the Court turns to Plaintiff's state law claims.  Defendants argue that any state law tort claim asserted against the City of Atlanta is barred by state sovereign immunity.

Generally speaking, sovereign immunity protects the state from suit without its consent.  See Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga., 633 F.3d 1297, 1307 (11th Cir. 2011); see also State Bd. of Educ. v. Drury, 437 S.E.2d 290, 292 (Ga. 1993).  "Under Georgia law, municipal corporations are protected by sovereign immunity pursuant [] to . . . Article IX, Section II, Paragraph IX [of the state constitution], unless that immunity is waived by the General Assembly."  City of Atlanta v. Mitcham, 769 S.E.2d 320, 322 (Ga. 2015).  The General Assembly enacted such a waiver in O.C.G.A. § 36-33-1.  According to that statute, a city or municipality in Georgia "is not liable for the negligence or misconduct of its officers in the performance of governmental functions," City of Atlanta v. Fry, 251 S.E.2d 90 (Ga. Ct. App. 1978), but may be liable for negligence or misconduct of its

17

officers in the performance of proprietary or ministerial functions.  Rutherford v. DeKalb County, 651 S.E.2d 771, 772 (Ga. Ct. App. 2007).

Plaintiff alleges that the City is liable under state law for negligent breach of ministerial duties.  That claim is grounded in Defendants' alleged failure to abide by the training requirements in the Georgia Peace Officer Standards and Training ("POST") Act, O.C.G.A. § 35-8-1 et seq., and Plaintiff's assertion that these failures are ministerial ones.  (See Compl., Dkt. [1-1] ¶ 76.)  The Court need not determine here whether or not adherence to the POST Act is ministerial.  The Georgia Court of Appeals has found that the POST Act does not create a private cause of action for POST Act violations, regardless of any additional official immunity protections.  See Govea v. City of Norcross, 608 S.E.2d 677, 683 (Ga. Ct. App. 2005) ("The POST Act expressly authorizes civil actions, but only by the POST Council, only for injunctive relief, and only under certain circumstances not alleged here.  The General Assembly could have created a cause of action in favor of private individuals injured for a unit's noncompliance with the POST Act reporting requirements. But it did not.").  Consequently, Plaintiff has not alleged a valid cause of action under state law for Defendants' alleged violations of Georgia's

18

POST Act.

Plaintiff further alleges that Defendants breached a ministerial duty in hiring Officer Locke.  But contrary to Plaintiff's assertion, hiring decisions do not constitute a "ministerial duty," the improper performance of which could subject the City of Atlanta to liability.  "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty."  Hicks v. McGee, 713 S.E.2d 841, 844 (Ga. 2011).  By contrast, "[a] discretionary act . . . calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."  Id.  The decision of whether or not to hire a particular applicant is not a ministerial act but a discretionary one, as it calls for a great deal of personal deliberation, judgment, and reasoning.  See Carter v. Glenn, 548 S.E.2d 110, 113 (Ga. Ct. App. 2001) ("The operation of a police department . . . is a discretionary governmental function of the municipality as opposed to a ministerial, proprietary, or administratively routine function.").  Therefore, regardless of whether Defendant Locke was hired negligently, the City has sovereign immunity as to that decision unless some other waiver

applies.  <u>Weaver v. City of Statesboro</u>, 653 S.E.2d 765, 768 (Ga. Ct. App.

2007).

Georgia law provides for another waiver of sovereign immunity in

subsection (a) of O.C.G.A. § 36-33-1, which allows for waiver of municipal

sovereign immunity "by the purchase of liability insurance if the 'policy of

insurance issued covers an occurrence for which the defense of sovereign

immunity is available, and then only to the extent of the limits of such

insurance policy.'"  <u>CSX Transp., Inc. v. City of Garden City</u>, 588 S.E.2d 688,

690 (Ga. 2003) (quoting O.C.G.A. § 36-33-1(a)).  Plaintiff attempts to invoke

this exception in her Complaint by alleging that "[a]ll Defendants named herein

are covered under policies of insurance for the negligent acts complained of

herein."  (Compl., Dkt [1-1] ¶ 77.)  This is a factual statement that must be

taken as true in considering a motion to dismiss.  <u>Bell Atl. Corp. v. Twombly</u>,

550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it

strikes a savvy judge that actual proof of those facts is improbable, and 'that a

recovery is very remote and unlikely.'" (quoting <u>Scheuer v. Rhodes</u>, 416 U.S.

232, 236 (1974))).  Therefore, at this stage, the Court finds that Plaintiff has

plead sufficient facts to support a theory that the City waived its sovereign

immunity to the extent of any insurance policy covering the negligent acts of its officers. Accordingly, Defendants' Motion to Dismiss Plaintiff's claims against the City of Atlanta for breach of ministerial duties is **DENIED**, but only so far as any insurance policy covering the negligent acts of the City of Atlanta's police officers waives the City's sovereign immunity.

    C.    <u>Claims against Individual Defendants</u>

To the extent that Plaintiff asserts liability against the individual Defendants in their official capacities, these claims are tantamount to a claim against the City and are therefore governed by the analysis for municipal liability. <u>See, e.g.</u>, <u>Kentucky v. Graham</u>, 473 U.S. 159, 165, 166 n.11 (1985) (reasoning that because "[o]fficial capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent," suits against government officials in their official capacities should be treated as suits against the government, itself) (internal quotation and citation omitted). Consequently, for the reasons set forth in Part II.B.1, *supra*, Plaintiff's constitutional and state-law negligence claims against Defendants Locke and Turner in their official capacity must be **DISMISSED**.

In addition, Plaintiff asserts claims against Defendants Locke and Turner

in their individual capacity.  In particular, Plaintiff alleges violations of both 42

U.S.C. § 1983 and state law.  The Court considers each of those claims as

alleged against each individual Defendant.

      *1.   Section 1983*

        <u>a.</u>   <u>Officer Turner</u>

It is well settled in this Circuit that "supervisory officials are not liable

under [Section] 1983 for the unconstitutional acts of their subordinates on the

basis of respondeat superior or vicarious liability." <u>Keith v. DeKalb Cty.</u>, 749

F.3d 1034,1047 (11th Cir. 2014) (quoting <u>Cottone v. Jenne</u>, 326 F.3d 1352,

1360 (11th Cir. 2003)).  There are no allegations that Chief Turner participated

personally in the immediate events leading up to Mr. Williams's death, nor that

he was present at the time in question.  Rather, Plaintiff bases her Section 1983

claim against Chief Turner on theories of deliberately indifferent hiring,

training, supervision, and discipline of Officer Locke.  However, for the

reasons stated in Part II.B.1, *supra*, those claims as alleged in the Complaint

fail as a matter of law.  Thus, without allegations of Chief Turner's personal

involvement in the purported constitutional violation, Plaintiff cannot sustain

her Section 1983 claims against Chief Turner in his individual capacity.  Those

AO 72A
(Rev.8/82)

claims are, therefore, **DISMISSED**.

       <u>b.</u>    <u>Officer Locke</u>

Defendants argue Officer Locke is entitled to qualified immunity on

Plaintiff's Section 1983 individual capacity claims.  "Qualified immunity offers

complete protection for individual public officials performing discretionary

functions 'insofar as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known.'"

<u>Sherrod v. Johnson</u>, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting <u>Harlow v.</u>

<u>Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  To claim qualified immunity, a

defendant must first show he was performing a discretionary function.  <u>Moreno</u>

<u>v. Turner</u>, 572 F. App'x 852, 855 (11th Cir. 2014).  "Once discretionary

authority is established, the burden then shifts to the plaintiff to show that

qualified immunity should not apply.  <u>Edwards v. Shanley</u>, 666 F.3d 1289,

1294 (11th Cir. 2012) (quoting <u>Lewis v. City of W. Palm Beach</u>, 561 F.3d

1288, 1291 (11th Cir. 2009).  A plaintiff demonstrates that qualified immunity

does not apply by showing: "(1) the defendant violated a constitutional right,

and (2) the right was clearly established at the time of the alleged violation."

<u>Moreno</u>, 572 F. App'x at 855.

As a threshold matter, the Court concludes Officer Locke was acting pursuant to his discretionary authority as an Atlanta Police Officer when the events at issue occurred.  See, e.g., Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004) (officer's use of deadly force in altercation with defendant was clearly within the scope of his discretionary authority).  Thus, there are two remaining inquiries: whether Plaintiff has alleged sufficient facts in her Complaint to illustrate a violation of a constitutional right and, if so, whether that right was clearly established at the time in question.

The court concludes that Plaintiff has alleged sufficient facts to show a constitutional violation on the part of Officer Locke.  "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from the use of excessive force in the course of an investigatory stop, or other 'seizure' of the person."  Id. (citing Graham v. Connor, 490 U.S. 386 (1989) and Tennessee v. Garner, 471 U.S. 1 (1985)). The question is an objective one.  The Court must ask whether the officer's conduct is objectively reasonable in light of the facts and circumstances confronting him, regardless of underlying intent or motive.  Id.; Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) ("[T]o determine whether the amount of

24

force used by a police officer was proper, a court must ask whether a
reasonable officer would believe that this level of force is necessary in the
situation at hand.") (internal quotation marks omitted).  This means the
officer's conduct "must be judged from the perspective of a reasonable officer
on the scene, rather than with the 20/20 vision of hindsight."  Id.

Applying this standard at the motion to dismiss stage, the Court finds
that Plaintiff has set forth facts sufficient to establish that Officer Locke's fatal
shooting was objectively unreasonable under the circumstances.  According to
the facts in the Complaint, when Officer Locke saw Mr. Williams, Mr.
Williams was unarmed, peaceably walking the streets of his neighborhood.
(Compl., Dkt. [1-1] ¶ 40.)  Officer Locke did not have a warrant for Mr.
Williams's arrest.  (Id.)  He had only a suspicion that Mr. Williams was
involved in the initial disturbance at 150 Adair Avenue based on a physical
description he had received.  (Id. ¶ 10.)  He also knew Mr. Williams suffered
from dementia and hearing impairment.  (Id.)  And though Officer Locke had
the means to alert Mr. Williams to his presence and initiate questioning, he did
not do so.  Officer Locke did not use the lights or sirens on his police car; nor
did he identify himself as a police officer.  (Id. ¶¶ 17-18.)  Instead, he rapidly

AO 72A
(Rev.8/82)

approached Mr. Williams, brandishing his firearm.  (Id. ¶¶ 22-23.)  This action

startled Mr. Williams.  However, Mr. Williams did not approach Officer Locke

or attempt to flee.  Accordingly, nothing indicated that Mr. Williams was

violent, armed, evasive, or uncooperative.  Nevertheless, Officer Locke chose

to employ deadly force against him.  (Id. at 26-27, 46.)  Such a decision, given

the circumstances, was objectively unreasonable.  Accordingly, based on the

facts alleged in her Complaint, Plaintiff  has established that a constitutional

right was violated.

That constitutional right was also clearly established.  "The relevant,

dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable officer that his conduct was unlawful

in the situation he confronted."  Saucier v. Katz, 533 U.S. 194,  202 (2001).

"[T]he salient question . . . is whether the state of the law . . . gave [the officer]

fair warning that [his] alleged treatment of [the suspect] was unconstitutional."

Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (quoting Hope v.

Pelzer, 536 U.S. 730, (2002)) (second alteration in original).  If the federal

statute or constitutional provision is so clear, and the conduct is so bad,

qualified immunity may be precluded even in the total absence of case law.  Id.

That is the case here.  It is clearly a constitutional violation to use deadly force against a potential suspect who does not pose a threat to the investigating officer or to anyone else, and was not attempting to flee or resist arrest.  Cf. Scott v. Harris, 550 U.S. 372, 395 (2007) ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." (quoting Garner, 471 U.S., at 11–12)). Therefore, based on the Complaint, the Court concludes that Plaintiff has sufficiently alleged not only that Officer Locke violated Mr. Williams's constitutional rights, but also that those rights were clearly established.  For these reasons, the Court concludes that Officer Locke is not entitled to qualified immunity at this juncture in the case and, as a consequence, Defendants' Motion to Dismiss Plaintiff's Section 1983 claims against Officer Locke in his individual capacity must be **DENIED**.[7]

> ## 2.   *State Law Claims*

---

[7] Of course, at this stage, the Court may consider only the facts in the Complaint, viewed in the light most favorable to Plaintiff. The Court recognizes that Defendants may be able to establish additional facts not alleged in the Complaint that would entitle Officer Locke to a grant of qualified immunity at the summary judgment stage. The Court's denial of qualified immunity is, therefore, without prejudice.

AO 72A
(Rev.8/82)

Plaintiff alleges Officer Locke is liable to both herself and her husband's estate under Georgia law for assault, battery, and wrongful death.  (Compl., Dkt [1-1], Counts IV, V, VII.)  Defendants respond that any state-law claims against Officer Locke are barred by official immunity.  (Mot. to Dismiss, Dkt. [3] at 19.)

As an initial matter, the Court notes that in Count VII of her Complaint, Plaintiff also alleges state-law negligence claims against Officer Locke, as well as Chief Turner under a theory of respondeat superior. However, the negligence Plaintiff alleges is failure to comply with the rules and regulations of Georgia's POST Act.  Because the Georgia Court of Appeals has concluded that there exists no private cause of action for POST Act violations (as discussed in Part B.1, *supra*), Count VII is due to be **DISMISSED**. Additionally, the Court only considers state-law claims against Officer Locke. Though Plaintiff alleges in Count VII that Chief Turner is "vicariously liable under Georgia law for the acts and omission committed by police officers working under his command," for the reasons stated above, that count is due to be dismissed  (Compl., Dkt [1-1] at ¶ 82.)

Under Georgia law, state and local officials may be liable for their

discretionary acts only "if they act with actual malice or with actual intent to cause injury." See GA. CONST. art. I, § II, ¶ IX(d); Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994).  "[I]n the context of official immunity, actual malice means a deliberate intention to do a wrongful act." Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. 1999).  Defendants insist that Plaintiff has failed to show "that Defendant Locke acted with actual malice under the *instant* facts (i.e., where Defendant Locke was forced to defend himself against Mr. Williams' violent attack)."  (Defs.' Reply, Dkt [9] at 8.)  As those are not the facts alleged in the Complaint, that argument cannot serve as a basis for dismissal.

The Complaint alleges that Officer Locke encountered Mr. Williams walking peaceably along a public road. There is no indication that Mr. Williams was hostile or posed a threat in any way.  Instead, the facts alleged in the Complaint suggest that Officer Locke approached Mr. Williams unannounced with his weapon drawn and, though Mr. Williams never advanced toward Officer Locke nor attempted to flee, Officer Locke shot him multiple times.  As alleged, these facts support a plausible inference of actual malice.  To the extent Defendants suggest that Plaintiff's factual allegations are

implausible, the Court may not dismiss a complaint "simply because the defendant (or the court) believes that the plaintiff will fail to find evidentiary support for [her] allegations." Roma Outdoor Creations, Inc. v. City of Cumming, 558 F. Supp. 2d 1283, 1285 (N.D. Ga. 2008).  Accordingly, Defendants' Motion to Dismiss Plaintiff's state law claims against Officer Locke in his individual capacity is **DENIED**.

    D.    Attorneys' Fees

Plaintiff alleges that she is entitled to attorneys' fees under 42 U.S.C. § 1988 and O.C.G.A. § 13-6-11 because "Defendants have been stubbornly litigious and have caused Plaintiff unnecessary trouble and expense."  (Compl., Dkt. [1-1] ¶ 84.)  Defendants move to dismiss that claim.  Because several of Plaintiff's substantive causes of action remain in this litigation, Defendants' Motion to Dismiss Plaintiff's claim for attorney's fees is **DENIED**.  See, e.g., Connell v. Houser, 375 S.E.2d 136, 139 (Ga. Ct. App. 1988) (finding that an attorneys' fee award under O.C.G.A. § 13-6-11 is predicated on finding a violation of the other elements of damages).

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's

Complaint is **GRANTED in part and DENIED in part**.  In sum, Count III is **DISMISSED**; Count VI is **DISMISSED**, except as alleged against the City of Atlanta and then only to the extent of any insurance policy covering the purported acts of the City's police officers; and Count VII is **DISMISSED**. Furthermore, all claims alleged against the Atlanta Police Department are **DISMISSED**. In addition, as no claims remain against Chief George Turner, he is hereby **DISMISSED** from this lawsuit.

   **SO ORDERED**, this 30th day of March, 2016.

                 _____
                 **RICHARD W. STORY**
                 United States District Judge

31